1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL H HILL,<br><br>                Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>              Defendant. | Case No.  1:18-cv-01673-DAD-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO<br>REMAND CASE TO THE COMMISSIONER[1]<br><br>(Doc. No.  20)<br><br>FOURTEEN-DAY OBJECTION PERIOD |

This case is before the undersigned on Plaintiff Michael H. Hill *pro se* appeal of the administrative decision of the Commissioner of Social Security denying his application for disability benefits pursuant to the Social Security Act.  The undersigned has reviewed the record, memoranda, and appliable law.  For the reasons stated herein, the undersigned RECOMMENDS that the Commissioner's decision be REMANDED for further administrative proceedings as set forth below.

## A.  FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 2015, Hill protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security

---

[1]  This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2019).

income. (AR 29).[2]  Hill's application was initially denied on May 9, 2016 and denied upon reconsideration on September 9, 2016.  (AR 205-09, 211-16).  Hill then requested and received a hearing before Administrative Law Judge Mary P. Parnow ("the ALJ") on August 20, 2018 where Hill appeared and testified.  (AR 58-98).  On September 25, 2018, the ALJ determined Hill was not disabled.  (AR 26-56).  The Appeals Council denied Hill's request for review on November 19, 2018.  (AR 5-10).  Hill has thus exhausted his administrative remedies.

Hill filed the present appeal before this Court on December 10, 2018.  (Doc. No. 1).  Hill voluntarily withdrew his appeal on July 25, 2019.  (Doc. No. 21).  The Court ordered the case closed.  (Doc. No. 22).   On May 12, 2020, the Court granted Hill's motion to reopen his appeal.  (Doc. Nos. 23, 24, 25).  On July 9, 2020, the Commissioner filed their opposition to Hill's opening brief.  (Doc. No. 27).  Hill filed a reply on September 2, 2020.  (Doc. No. 28).

### 1. Hearing Testimony

Hill appeared with counsel and testified at a video hearing on August 20, 2018.  (AR 58-98).  Hill explained he had been diagnosed with bipolar disorder, anxiety, and suffered from audio and visual paranoia and hallucinations.  (AR 78, 83).  Hill testified he suffered side effects from the multiple medications he was prescribed for his disorders causing him "cold-like symptoms" which made him feel "like a zombie" and forcing him to "sleep for a very long period of time."  (AR 79).  On other occasions Hill felt "manic" and couldn't sleep.  (*Id.*).  Hill reported that alternating between these two states caused dramatic mood swings.  (AR 81-82).

About half of the time, Hill reported difficulty focusing due to racing thoughts.  (AR 82).  Hill acknowledged he suffered from substance abuse but was receiving treatment and had not used methamphetamines in over 90 days.  (AR 83-85, 87).  Hill further described a fracture to his right hand which rendered him unable to open two of his fingers.  (AR 85).  The right-handed Hill explained that as a result he has trouble lifting heavy objects and cooking and often must favor his left land.

Hill also detailed his challenges interacting with others.  (AR 85-87).  He acknowledged

---

[2] The Court cites to the page number found in the bottom right-hand corner of the Administrative Record.

1    not having any friends and his family ostracizing him due to his mental illness.  (AR 86).  This

2    placed Hill in an uncomfortable feedback loop—a "catch-22"—where his mental illness

3    repelled others thereby increasing Hill's anxiety and mental illness, which then only pushed

4    people further away.  (AR 86-87).

5          Prior to the downturn in his condition, Hill attested he held several jobs from 2006-2017

6    where he operated forklifts and heavy equipment movers but had not worked since.  (AR 88-

7    89).  Those positions required Hill to frequently interact with co-workers.  (AR 92-93).

8          A vocational expert, Laurence S. Hughes ("Hughes") testified to his conclusion that Hill

9    could continue working under specific conditions.  (AR 90-97).  Per the records he reviewed,

10   Hughes recalled Hill had worked as a sandblaster coater from 2006-2013, which was medium to

11   heavy work.  (AR 90-91).  Because that job required Hill to work alongside others, Hughes and

12   the ALJ agreed Hill could not return to the same position.  (AR 93).  However, Hughes testified

13   Hill could work as a machine feeder, industrial cleaner, or a vehicle cleaner, all of which are

14   medium work jobs.  (AR 93).  Even if Hill was unable to drive and thus work as vehicle cleaner,

15   Hughes noted there were approximately 120,000 people in the United States employed as

16   machine feeders or industrial cleaners.  (AR 93-94).  Hughes believes these jobs remained

17   viable options for Hill even if he was off task 10 percent of the time, but not 11 percent or

18   higher.  (AR 94).  Hughes further testified to his belief that Hill would remain employed if he

19   missed one day of work per month but absences beyond that would likely jeopardize continued

20   employment.  (AR 96).

21         Dr. Nathan Strahl, M.D., Ph.D. ("Dr. Strahl"), a psychological expert, also testified to

22   Hill's condition based on his previous five years of medical records. (AR 63-77).  Dr. Strahl

23   detailed how Hill had been diagnosed with bipolar disorder, but noted Hill inconsistently took

24   his medications and had been hospitalized for paranoid thinking.  (AR 63-64).  Hill's condition

25   was exacerbated by amphetamine abuse, and Dr. Strahl opined that if that continued, "there is

26   no way" Hill can work.  (AR 66-68).  However, if Hill were to quit abusing substances, Dr.

27   Strahl believed Hill could work, unless in the "unlikely . . . but possible" event Hill's

28   personality disorders are more severe than the medical records indicated.  (AR 70-71).

Dr. Strahl concluded there was "evidentiary material to give a 12.04 as bipolar disorder and that clearly is exacerbated by amphetamine substance use disorder." (AR 65). Dr. Strahl further posited that it wasn't an "issue of cognition for [Hill]" but rather one of his abuse of amphetamines. Without the substance abuse, Dr. Strahl argued Hill's "[s]ocialization would be moderate concentration focus persistence, and pace would be marked and adaptability would also be marked." (AR 67). Upon questioning from Hill's attorney, Dr. Strahl acknowledged he "really didn't see a whole lot of significant improvement" in Hill's mental state during Hill's purported periods of sobriety. (AR 72).

**2. ALJ Findings**

In a decision dated September 25, 2018, the ALJ found Hill "not disabled." (AR 50). In support, the ALJ made the following findings of fact and conclusions of law:

- Hill met the insured status requirements of the Social Security Act through June 30, 2018. (AR 32).

- Hill had not engaged in substantial gainful activity since the alleged onset date of October 6, 2015. (AR 32).

- Hill's birthday is February 24, 1982, making him 33 years old on the alleged onset date. (AR 48).

- Hill can speak English and received a high school education. (AR 48).

- Hill had the following severe impairments: bipolar disorder; substance use disorder; personality disorder; and status post fracture and Open Reduction Internal Fixation of the right fourth and fifth metacarpals with posttraumatic arthritis. (AR 32).

- Hill's impairments, including the substance use disorder, meet sections 12.04 and 12.08 of 20 CFR Part 404 Subpart P Appendix 1. Further, Hill's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 32-33).

- Hill's mental impairments meets listing severity *if* considering his substance abuse. (AR 32-33).

- Dr. Strahl's testimony deserved significant weight due to its consistency with the record as a whole. (AR 33).

4

- If Hill quit abusing amphetamines, the remaining limitations would still cause more than a minimal impact on Hill's ability to perform basic work activities and thus Hill would continue to have a severe impairment or combination of impairments.  (AR 33-34).

- If Hill ceased his substance abuse, he would *not* have an impairment or combination of impairments that functionally equals the severity of the listings.  (AR 34).

- If Hill ceased abusing amphetamines, he would have the residual functional capacity to perform medium work as defined in 20 CFR 404.1567c and 416.967c and could perform simple and detailed tasks but not complex tasks.   He could work with supervisors for 100% of the time, frequently interact with co-workers, and occasionally with the general public.  (AR 34-48).

- Even if Hill quit abusing amphetamines, he would be unable to perform past relevant work.  (AR 48).

- Hill is not disabled, regardless if he has transferable job skills.  (AR 48).

- If Hill stopped abusing amphetamines, there would be a significant number of jobs in the national economy that he could work.  (AR 48-49).

- The substance use disorder is a contributing factor material to the determination of disability because Hill would not be disabled if he stopped the substance use.  **Because the substance use disorder is a contributing factor material to the determination of disability, Hill has not been disabled as defined in the Social Security Act since the alleged onset date of October 6, 2015 through the date of the decision**.  (AR 49-50) (emphasis added).

## B.  APPLICABLE LAW

A claimant may seek judicial review of any final decision of the Commissioner of Social Security following a denial of benefits.  42 U.S.C. § 405(g).  The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  Substantial evidence is not "a mere scintilla," but rather "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

1   *Kelaita v. Director, OWCP*, 799 F.2d 1308, 1312 (9th Cir. 1986) (internal quotations omitted).

2   "[A] reviewing court must consider the entire record as a whole and may not affirm

3   simply by isolating a specific quantum of supporting evidence." *Hill*, 698 F.3d at 1159 (quoting

4   *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

5   this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

6   for the ALJ's.  See *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

7   susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

8   upheld.").

9                                    **C.  ANALYSIS**

10          Hill makes four arguments on appeal: (1) The ALJ's decision was premised on a

11   misdiagnosis; (2) The ALJ wrongly concluded Plaintiff's drug abuse was a material contributing

12   factor; (3) The ALJ ignored the opinions of Plaintiff' doctors, Omar Jadid, MFT intern and

13   Antoinette Placenti, NP; and (4) The ALJ's decision was delayed.  (Doc. No. 20 at 25, 29, 33

14   and 41).  The undersigned addresses each argument *in seriatim*.

15          **1. The ALJ's decision was premised on a misdiagnosis**

16          Hill contends the ALJ based her denial on a misunderstanding of his diagnosis.  (Doc. No.

17   20 at 24-28).  In support, Hill claims Dr. Strahl and the ALJ relied upon "a diagnosis print out

18   from Kern County Mental Health" in which "the printer cutt [sic]  off partial diagnosis."  (*Id.* at

19   24-25).  Hill states his actual diagnosis is that of "meth induced psychosis without use," rather

20   than "meth induced psychosis."  (*Id.* at 24-25).  Hill argues this distinction is important because

21   it means his symptoms would be present even "in the absence of substance abuse."  (*Id.*)

22          Hill attaches a June 21, 2017 Diagnostic Review Form ("June 21 Form") which states his

23   diagnosis of "Amphetamine (or other stimulant) induced psychotic disorder" had shifted from

24   "moderate to or severe use disorder" to "without use disorder."  (*Id.* at 27).  A copy of the same

25   June 21 Diagnostic Review Form from the record reflects, due to the size constraints of the text

26   box, that Hill's diagnosis is listed as ("Amphetamine (or other stimulant)-i" and does not

27   indicate Hill's change in substance abuse disorder status from "moderate or severe" to "without

28   use."  (AR 1040).  While the June 21 Form never states it outright, the shift in Hill's diagnosis

                                          6

1   appears to be premised on his sobriety.  (AR 1039).

2          On June 21, 2017, Hill underwent his Annual Mental Health Reassessment which was

3   administered by intern Omar Marwan Jadid ("Jadid").  (AR 1037-1041).  Jadid reported Hill, who

4   had been living at Freedom House since February 2017, had been sober for months.  (AR 1037).

5   Despite his reported sobriety, Hill still complained of "severe anxiety," hallucinations and

6   "occasional paranoid thoughts."  (AR 1037-1041).  These symptoms left Hill struggling "to carry

7   out complex tasks" and be "present with groups of people."  (*Id.*)  Still, Hill reported he was

8   happy about his recovery and was optimistic it would continue.  (AR 1039).  This abbreviated

9   form was relied on by the ALJ.  (*Id.*)

10          The ALJ's opinion makes clear she understood the June 21 Form was premised on Hill's

11   sobriety, writing that Hill's then symptoms addressed in the June 21 Form "were reportedly not a

12   result of drug/alcohol use as he had maintained sobriety" prior to this assessment.  (AR 46).  The

13   distinction between whether the ALJ understood Hill's diagnosis to be "without use" is

14   accordingly immaterial since she read the June 21 Form to mean he was not *currently* abusing

15   amphetamines.  Thus, the undersigned recommends that the Court reject this ground of the appeal

16   because the ALJ did not err when reviewing the June 21 Form.

17          **2.  The ALJ erroneously concluded drug abuse was a contributing material factor**

18          Hill next argues the ALJ improperly concluded that his substance abuse was a

19   contributing material factor to his severe impairments.  (Doc. No. 20 at 29-33).  Hill submitted

20   medical reports from Antoinette Placenti, NP dated June 5, 2017, Omar Jadid, MFT, dated June

21   21, 2017, and Kimberly Hoffman, Pharm D., BCPP, dated June 5, 2017.  (AR 46-47).  The ALJ

22   noted the treatment providers "opined on numerous occasions that the claimant was not able to

23   work and his current disability was moderate."  (*Id*).

24          The record reflects the ALJ gave the reports from the treatment providers, including the

25   June 21 Form, "little weight" because she found they were "not supported by the record as a

26   whole."  (AR 47).  The ALJ pointed to Hill's treating doctor's assessments and the "generally

27   mild findings on mental status examinations" to conclude Hill's symptoms "improved with

28   medication compliance."  (*Id.*)  Significantly, the ALJ asserted there was "patent evidence" of

1    Hill's continued "substance use from 2015 through 2018."  The ALJ specifically points to Hill's

2    relapse in May 2017.  (AR 37, 42).  Thus, whether Hill had substance abuse and relapsed in

3    May 2017 is decisive because it would contradict the reports from the various treatment

4    providers, including the June 21 Form's conclusion that Hill was experiencing debilitating

5    symptoms despite being sober throughout the first half of 2017.

6         In support of her finding that Hill relapsed in May of 2017, the ALJ cites to Hill's June

7    5, 2017 psychiatric visit.  (AR 37, 42, 994).  The ALJ quotes from the Alcohol/Drug Use section

8    of a June 5, 2017 form ("June 5 Form") which states Hill last used amphetamines "on the 18th

9    of last month" and last used heroin from the "14-15th last month."  (AR 994).  But the same

10   Form states Hill last drank alcohol "the 18th of last month (December)."  (*Id.*)  Upon review of

11   the record, the notation from the form and verbatim alcohol/drug use entry first appears in Hill's

12   January 11, 2017 ("January 11 Form") mental health assessment (AR 1024), and clearly is

13   discussing Hill's drug and alcohol use from December 2016.[3]  This same entry reappears in its

14   exact original language in multiple other assessments, including Hill's June 5, 2017 (AR 994),

15   February 1, 2018 (AR 1050), February 15, 2018 (AR 1070) and June 26, 2018 (AR 1092)

16   assessments.  By all indications, this note refers to Hill's substance abuse in December 2016 and

17   not in May 2017, as understood by the ALJ.

18        The ALJ cited to the June 5 Form's reprinting of the January 11 Form's alcohol drug/use

19   section as evidence Hill continued to abuse drugs in May 2017 despite professed sobriety.  (AR

20   37, 42, 47).  Her assessment that Hill had relapsed and was abusing drugs justified, in part, her

21   giving little weight to Hill's treatment providers (Ms. Placenti, Mr. Jadid, and Ms. Hoffman)

22   who found that Hill's bipolar disorder precluded him from work even when sober because she

23   found they did "not adequately consider the claimant's substance use, which the record revealed

24   patent evidence of substance use from 2015 through 2018."  (AR 47).  The ALJ found Hill's

25   mental health problems occurred when Hill was engaged in "active substance use."  (AR 42).

26   _____

27   [3] The January 11, 2017 form, as well as the June 5, 2017 form and other forms all contained the same
     notation, which appears to have originated from Plaintiff's 12/13/2016 "Physician's Emergency
28   Certificate" when he spent 22 days in December 2016 and January 2017 at Freise Hope House receiving
     treatment for suicidal ideation.  (AR 845-903).

1    But there is no evidence in the administrative record that Hill abused drugs after December 2016

2    and his mental health assessment on June 21, 2017 which, per the ALJ's summary, indicates

3    Hill had "severe impairments in independent living and vocation/education and moderate

4    impairment in social relationships," despite six months of sobriety.  (AR 47).  Had the ALJ not

5    dismissed the treatment providers June reports in part because of her finding of Hill's "patent"

6    amphetamine abuse, and accurately assessed the lack of evidence that Hill was engaged in

7    substance abuse during this time, the ALJ may have given Hill's treatment providers opinions

8    and the June reports greater weight and come to a different conclusion regarding Hill's RFC and

9    his ability to work.  Thus, the undersigned finds the ALJ's conclusion that Hill was abusing

10   substances and had relapsed in May 2017 is not supported by substantial evidence.

11         Upon concluding an ALJ has erred, the court assesses whether that error was

12   "harmless."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).  An ALJ's error is

13   harmless if it "was clear from the record that an ALJ's error was inconsequential to the ultimate

14   nondisability determination."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1169 (9th

15   Cir. 2008) (internal quotations omitted).  Here, the ALJ's finding that the record evidenced Hill

16   abused drugs from 2015 through 2018, including in May 2017, underpinned her determination

17   that Hill could work when sober.  The ALJ's error was accordingly not harmless.

18         Admittedly, the ALJ correctly points out inconsistencies in Hill's assessments, and there

19   is evidence in the record Hill's condition did improve with treatment.  (AR 38).  Dr. Strahl, who

20   presumably did not misread Hill's assessments, believed Hill could work unless in the "unlikely

21   …but possible" event Hill's personality disorders are more severe than the medical records

22   indicated.  (AR 70-71).  And as the Commissioner argues in their opposition – although not

23   addressing whether the ALJ correctly assessed Hill's capacity during his claimed periods of

24   sobriety – that there is considerable evidence underpinning the ALJ's decision and substance

25   abuse in October 2017.  (Doc. No. 27 pp. 8-9).  None of this, however, negates the ALJ's

26   consequential error that Hill's worst symptoms only occurred following drug abuse.

27         Although there is no evidence in the record affirmatively finding substance abuse by Hill

28   from December 2016 through June 2017, this does not mean that Hill's substance abuse was not

9

otherwise material.   Hill bears the burden of proving that his substance abuse was not material. 20 C.F.R. §§ 404.1535, 416.935; *Parra v. Astrue*, 481 F. 3d 742, 748 (9th Cir. 2007).  The undersigned therefore recommends the court remand the case for further proceedings on this ground. *See Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1101 (9th Cir. 2014 ("Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is appropriate,").

**3. The ALJ ignored opinions by Omar Jadid, MFT and Antoinette Placenti, NP**

Hill argues the ALJ "completely" ignored the opinions of Omar Jadid MFT intern, and Antoinette Placenti, NP.  (Doc. No. 20 pp. 33-40).  However, the ALJ discussed both of their assessments at length.  (AR 46).  The ALJ did not "completely" ignore these treatment providers opinions but instead gave them "little weight" on the basis that they were "not supported by the record as a whole which revealed improvement with medication compliance," contained "conclusory statements and do not explain why the claimant is unable to work" and "do not adequately consider the claimants substance use which the record revealed patent evidence of substance use from 2015 through 2018."  (AR 47).  Based on these findings, the ALJ determined "these opinions do not fully consider the claimants abilities in light of the substance use" and were "not supported by the claimants statements the evidence of improvement with compliance the treatment providers assessments and the generally mild findings on mental status examinations."  (*Id.*).

It is within the ALJ's purview to assign varying levels of weight to different experts when determining an individual's RFC.  Assigning some experts limited weight is not the same as ignoring their opinions.  Accordingly, Hill's claim that the ALJ "ignored" the opinions of Omar Jadid, MFT intern, and Antoinette Placenti, NP is disputed by the record.  However, the fact that the ALJ assigned "little weight" based on the ALJ's findings of Hill's relapse and evidence of substance abuse during the entirety of 2015 through 2018, including in May 2017, does merit reconsideration whether these opinions warrant greater weight.  Thus, for the same reason, *supra*, the undersigned recommends the court remand the case for further proceedings on this ground to the extent whether greater weight should be afforded to the treatment

10

1    providers reports and opinions.

2        **4. Delay in final determination**

3        Last, Hill contends his delay in receiving a final determination of his benefits eligibility is

4    an "error in law" that mandates reversal.  (Doc. No. 20 at 41).  A delay, if any, in receiving a

5    determination on benefits eligibility is not a basis for remand.  The undersigned recommends the

6    Court reject this ground for appeal as without merit.

7                **D.  CONCLUSION AND RECOMMENDATION**

8        Accordingly, it is respectfully RECOMMENDED that the Court enter an order:

9        Directing the Clerk of Court to enter judgment, pursuant to sentence four of 42 U.S.C.§

10   405(g), REVERSING the Commissioner's decision and REMANDING this case back to the

11   Commissioner of Social Security for further proceedings consistent with these findings and

12   recommendations, and terminate any motions and deadline and close this case.

13                    **NOTICE TO PARTIES**

14       These findings and recommendations will be submitted to the United States District Judge

15   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen

16   (14) days after being served with these findings and recommendations, a party may file written

17   objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

18   Findings and Recommendations."  Parties are advised that failure to file objections within the

19   specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

20   838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

21

22   Dated:    September 10, 2021

23                                HELENA M. BARCH-KUCHTA
                                  UNITED STATES MAGISTRATE JUDGE
24

25

26

27

28

                                    11